## BROWN COUNTY V. JENKINS *et al.*

Under Comp. Laws, § 593, enjoining the county commissioners to superintend the fiscal concerns of the county, and secure their management in the best manner, the commissioners may in good faith, and for value, sell to an outgoing county officer, not officially interested therein, outstanding overdue and uncollectible notes belonging to the county, no consideration of public policy being involved.

(Opinion filed December 17, 1898.)

Appeal from circuit court, Brown county.   Hon. E. G. SMITH, Judge.

Action by the county of Brown against George W. Jenkins and P. T. Burns, to recover the possession of certain promissory notes.   There was a judgment for defendants, and plaintiff appeals.   Affirmed.

The facts are stated in the opinion.

*H. H. Potter*, for appellant.

*L. W. Crofoot* and *George W. Jenkins*, for respondents.

FULLER, J.   This action to recover from the defendant the possession of a number of promissory notes executed by certain persons to the county during the years 1890 and 1891 for seed grain furnished upon a showing that their subsistence depended upon thus being provided for pursuant to Chapt. 72 of the Laws of 1890, was tried to the court without a jury, and resulted in a judgment dismissing the complaint, and for costs in favor of defendant, who, on the 17th day of December, 1896, purchased these notes from the county, paying an adequate compensation therefor.   From the beginning, counsel for plaintiff and appellant has maintained that the board of county commissioners had no authority to sell such property, and that the purchase of the same by respondent while state's attorney of the county is against public policy, and consequently illegal.   More than three years prior to the transaction complained of the notes in controversy, together with others of similar character, were placed with respondent for collection under a contract by which he was to pay all expenses connected therewith in consideration of 25 per centum of all the money actually received by reason of such employment; and these apparently less available claims were still in his hands when, after a careful investigation by the board of county commissioners as to their real value, a proposition was made to sell and transfer the same to respondent for a certain consideration in cash, and in full settlement of a disputed claim against the county for salary as state's attorney and for office rent, to which respondent deemed himself entitled.   Upon this basis the sale was finally negotiated, and it appears that the board acted in good faith to promote the welfare of the county.   Concerning the notes and respondent's conduct the court found the following with reference

thereto: "That none of the makers had sufficient property exempt from execution so that payment could be enforced by proceedings at law; that about one-half of said notes were given in 1890, and more than six years have elapsed since their maturity, and that no payments have been made upon most of the 1890 notes; that the said notes had no fixed value, but their value depended upon circumstances, and upon how much could be worked out of them by making settlement with the makers; and that the consideration paid for said notes by the said defendant, Jenkins, was adequate; that the board of county commissioners of said plaintiff county have never rescinded or offered to rescind such sale, or restored or offered to restore to the defendant, Jenkins, any portion of the purchase money; that there was no collusion between the defendant, Jenkins, and the board of county commissioners, or any of its members, to defraud the plaintiff county, or to dispose of said notes to said Jenkins for less than their real value; that the said Jenkins was guilty of no fraud or fraudulent concealment in regard to the value of said notes, or the financial condition of the makers thereof in making such purchase." Every element of bad faith, fraud or collusion being thus eliminated, the power of the board to sell stale bills receiveable in favor of the county for all they are worth, and, in connection therewith, effect the settlement of a disputed claim in favor of an outgoing officer and against such county, is a proposition admitting of no serious doubt. The board, being charged exclusively with the management of all fiscal affairs pertaining to the county, has authority, unless restricted by the legislature, to do that which the county might perform if an entity, and capable of rational action; and the proposition carries with it authority to compromise in an honest

manner a disputed or doubtful claim in favor of or against the municipality. State v. Davis 11 S. D. 111, 75 N. W. 897. Such authority is an incident to official capacity, and the power to institute, prosecute and defend suits. Agnew v. Brall, 124 Ill. 312, 16 N. E. 230; Allen v. Cerro Gordo Co., 34 Iowa, 54; Town of Petersburg v. Mappin, 14 Ill. 193; Hornblower v. Duden, 35 Cal. 664. From the statutory injunction that "they shall superintend the fiscal concerns of the county and secure their management in the best manner" (Comp. Laws, § 593) emanates by necessary implication, ample authority to sell to another in good faith, and for value, outstanding overdue and uncollectible promissory notes belonging to the county; and no consideration of public policy is involved, although the sale is made to an outgoing officer of the county, unless such officer be a member of the board, or officially interested in the trans action. As the record discloses no error, the judgment appealed from is affirmed.